**FILED**
**United States Court of Appeals**
**Tenth Circuit**

**January 19, 2018**

**Elisabeth A. Shumaker**
**Clerk of Court**

<u>**PUBLISH**</u>

**UNITED STATES COURT OF APPEALS**

**FOR THE TENTH CIRCUIT**

_____

DENNIS OBDUSKEY,

    Plaintiff - Appellant,

v.

WELLS FARGO; WELLS FARGO
BANK; WELLS FARGO & CO; WELLS
FARGO BANK NA; WELLS FARGO
HOME MORTGAGE; MCCARTHY AND
HOLTHUS LLP,

    Defendants - Appellees.

No. 16-1330

_____

**Appeal from the United States District Court**
**for the District of Colorado**
**(D.C. No. 1:15-CV-01734-RBJ)**

_____

Steven L. Hill of Riggs, Abney, Neal, Turpen, Orbison & Lewis, Denver, Colorado, for
Plaintiff - Appellant.

Jessica E. Yates of Snell & Wilmer, L.L.P., Denver, Colorado, for
Defendants - Appellees Wells Fargo, Wells Fargo Bank, Wells Fargo & Co., Wells Fargo
Bank, N.A., Wells Fargo Home Mortgage.

Holly R. Shilliday of McCarthy & Holthus, L.L.P., Centennial, Colorado, for
Defendants -Appellees McCarthy & Holthus, L.L.P.

_____

Before **MORITZ**, **KELLY**, and **MURPHY**, Circuit Judges.

_____

**KELLY**, Circuit Judge.

_____

Plaintiff-Appellant Dennis Obduskey appeals from the district court's order granting Defendants-Appellees Wells Fargo and McCarthy and Holthus, LLP's motions to dismiss numerous claims, including whether either party was liable as a "debt collector" under the Fair Debt Collection Practices Act, 15 U.S.C. §§ 1692–1692p. Obduskey v. Fargo, No. 15-CV-01734-RBJ, 2016 WL 4091174 (D. Colo. July 19, 2016). Having jurisdiction under 28 U.S.C. § 1291, we affirm.

## Background

In 2007, Mr. Obduskey obtained a $329,940 loan from Magnus Financial Corporation to buy a home. The loan was secured by his property and was serviced by Wells Fargo. Aplee. Supp. App. 107. Mr. Obduskey eventually defaulted on the loan in 2009. Id. at 109. Several foreclosure proceedings were initiated over the following six years, none of which were completed. Mr. Obduskey's loan remains in default.

In 2014, Wells Fargo hired McCarthy and Holthus, LLP (McCarthy), a law firm, to pursue a non-judicial foreclosure on Mr. Obduskey's home. McCarthy initially sent Mr. Obduskey an undated letter stating that McCarthy "MAY BE CONSIDERED A DEBT COLLECTOR ATTEMPTING TO COLLECT A DEBT." Id. at 127. The letter explained that McCarthy was "instructed to commence foreclosure against" Mr. Obduskey's home. Id. It referenced the amount owed and noted the current creditor as Wells Fargo. Id. Mr. Obduskey apparently responded to the letter disputing the debt, id. at 124; however, instead of replying to his letter,

2

McCarthy initiated a foreclosure action in May of 2015.[1]  Mr. Obduskey then filed

this action claiming (1) a violation of the Fair Debt Collection Practices Act; (2) a

violation of the Colorado Consumer Protection Act; (3) defamation; (4) extreme and

outrageous conduct — emotional distress; and (5) commencement of an unlawful

collections action.  Aplee. Supp. App. at 21–27.

Wells Fargo and McCarthy filed motions to dismiss, which the district court

granted on all claims.  Obduskey, 2016 WL 4091174, at *8.  Regarding the FDCPA

claim, the district court held that Wells Fargo was not liable because it began

servicing the loan prior to default.  Id. at *3.  It also held that McCarthy was not a

"debt collector" because "foreclosure proceedings are not a collection of a debt," but

it noted that "not all courts have agreed" on whether foreclosure proceedings are

covered under the FDCPA.  Id.  To settle this confusion, we asked both parties to

provide supplemental briefing on the issue.  We now hold that the FDCPA does not

apply to non-judicial foreclosure proceedings in Colorado.

**Discussion**

We review the grant of a motion to dismiss de novo.  Khalik v. United Air

Lines, 671 F.3d 1188, 1190 (10th Cir. 2012).  We begin with the FDCPA claim

against Wells Fargo and McCarthy.

---

[1] McCarthy apparently responded to the letter on August 4, 2015, almost one year after Mr. Obduskey's initial letter.  Aplt. Reply Br. to Aplee. Jt. Supp. Br. Ex. 3.

I.      Fair Debt Collection Practices Act

The Fair Debt Collection Practices Act was enacted, in part, to "eliminate abusive debt collection practices by debt collectors."  15 U.S.C. § 1692(e) (2012).  It prohibits "abusive, deceptive, and unfair debt collection practices," such as late-night phone calls or falsely representing to a consumer the amount of debt owed.  Id. §§ 1692(a), 1692c, 1692e.  To prevail under the FDCPA, a plaintiff must prove that the defendant is a "debt collector" who is trying to collect a "debt" from the plaintiff in violation of some provision of the FDCPA.  A "debt collector" is defined as "any person . . . who regularly collects or attempts to collect, directly or indirectly, debts owed or due . . . another.  Id. § 1692a(6).  "Debt" is further defined as "any obligation . . . to pay money."  Id. § 1692a(5).

On appeal, Mr. Obduskey claims numerous violations of the FDCPA, including that Wells Fargo and McCarthy violated § 1692g by failing to "respond to a properly delivered notice requesting debt validation."[2]  Aplt. Br. at 18–21.

A.  Wells Fargo Is Not a Debt Collector

The district court held that Wells Fargo was not a debt collector because "Mr. Obduskey was not in default when . . . Wells Fargo began servicing the loan or when it became the assignee of the debt."  Obduskey, 2016 WL 4091174, at *3.  We agree. The FDCPA excludes "any person collecting or attempting to collect any debt . . .

---

[2] Mr. Obduskey also claims violations of §§ 1692c (communicating with third party), 1692d (harassment), 1692e (false or misleading representations), and 1692f (unfair practices).  Aplt. Br. at 21.

which was not in default at the time it was obtained by such person." 15 U.S.C. § 1692(a)(6)(F). Furthermore, the Senate Report notes that "the committee does not intend the definition [of debt collector] to cover . . . mortgage service companies and others who service outstanding debts for others, so long as the debts were not in default when taken for servicing." S. Rep. No. 95-382, at 3–4 (1977). While Mr. Obduskey does allege that Wells Fargo sent him confusing information concerning whether Wells Fargo was the servicer of the loan or whether it actually owned the loan, Mr. Obduskey admits that Wells Fargo began servicing the loan before he went into default and that it continued to do so after he defaulted. See Aplee. Supp. App. at 12, ¶ 5, at 14, ¶ 14. Therefore, Wells Fargo is not a "debt collector" under the FDCPA. See Perry v. Stewart Title Co., 756 F.2d 1197, 1208 (5th Cir. 1985).

B. McCarthy Is Not a Debt Collector

McCarthy argues that we should affirm the district court's dismissal because Mr. Obduskey has failed to adequately allege a claim against it under the FDCPA. While Mr. Obduskey's complaint is far from perfect, we find that he has sufficiently pled that McCarthy failed to verify Mr. Obduskey's debt after it was disputed, in violation of § 1692g. See Aplee. Supp. App. at 16, ¶¶ 21–23. McCarthy also claimed for the first time in oral argument that Mr. Obduskey had waived the FDCPA claim against it by failing to raise it in the opening brief. We disagree. Mr. Obduskey specifically argues in his opening brief that McCarthy "violated the FDCPA by ignoring [a] valid written request related to verification of the debt and

5

continued to collect." Aplt. Br. at 18. Regardless, we hold that McCarthy is not a debt collector for purposes of the FDCPA.

    1. <u>The FDCPA Does Not Cover Non-Judicial Foreclosure Proceedings</u>

Whether the FDCPA applies to non-judicial foreclosure proceedings has divided the circuits. The Ninth Circuit, along with numerous district courts, has held that non-judicial foreclosure proceedings are not covered under the FDCPA. <u>Vien-Phuong Thi Ho v. ReconTrust Co.</u>, 858 F.3d 568 (9th Cir. 2016) (<u>Ho</u>). The Fourth, Fifth, and Sixth Circuits, as well as the Colorado Supreme Court, have held that they are covered. <u>Wilson v. Draper & Goldberg, P.L.L.C.</u>, 443 F.3d 373 (4th Cir. 2006); <u>Kaltenbach v. Richards</u>, 464 F.3d 524 (5th Cir. 2006); <u>Glazer v. Chase Home Fin. LLC</u>, 704 F.3d 453 (6th Cir. 2013); <u>Shapiro & Meinhold v. Zartman</u>, 823 P.2d 120 (Colo. 1992) (en banc). The Tenth Circuit has been presented with this issue twice but has declined to address it because of pleading deficiencies in the complaint. <u>See</u> <u>Burnett v. Mortg. Elec. Registration Sys., Inc.</u>, 706 F.3d 1231, 1239 (10th Cir. 2013); <u>Maynard v. Cannon</u>, 401 F. App'x 389, 395 (10th Cir. 2010). While there arguably may be some deficiencies in Mr. Obduskey's complaint, to provide clarity in this circuit, we address this issue.[3] <u>Compare</u> <u>Huckfeldt v. BAC Home Loans Servicing,</u>

---

[3] This confusion is also apparent in the Colorado Rule 120 Committee Comment: "There was considerable debate concerning whether the Federal 'Fair Debt Collection Practices Act' is applicable to a C.R.C.P. 120 proceeding. Rather than attempting to mandate compliance with that federal statute by specific rule provision, the Committee recommends that a person acting as a debt collector in a matter covered by the provisions of the Federal 'Fair Debt Collection Practices Act' be aware of the potential applicability of the Act and comply with it, notwithstanding

6

LP, 2011 WL 4502036, at *5 (D. Colo. Sept. 29, 2011) (finding that Colorado non-judicial foreclosure proceeding falls under the FDCPA), with Schwitzer v. Wells Fargo Bank, N.A., 2013 WL 607832, at *5 (D. Colo. Feb. 19, 2013) ("[T]he vast majority of courts, especially in this District, have found that foreclosure activities are outside the scope of the FDCPA.").

    a.  Plain Language of the Statute

"[I]t is our primary task in interpreting statutes to determine congressional intent, using traditional tools of statutory construction." Coffey v. Freeport McMoran Copper & Gold, 581 F.3d 1240, 1245 (10th Cir. 2009) (quoting Russell v. United States, 551 F.3d 1174, 1178 (10th Cir. 2008)). Our first task is always to examine the language of the statute. Woods v. Standard Ins. Co., 771 F.3d 1257, 1265 (10th Cir. 2014). When that language is clear, we ordinarily end our analysis. Id. If, however, the language leaves us uncertain, we turn to the legislative history and policy of the statute to deduce Congress's intent. Id.

McCarthy argues that the plain language of the FDCPA dictates that it is not a "debt collector." Relying principally on the Ninth Circuit's decision in Vien-Phuong Thi Ho v. ReconTrust Co., 858 F.3d 568 (9th Cir. 2016), it argues that because debt is synonymous with "money," the FDCPA "imposes liability only when an entity is attempting to collect" money. 858 F.3d at 571. Because enforcing a security interest is not an attempt to collect money from the debtor, and the consumer has no

---

any provision of this Rule." C.R.C.P. 120, Committee Comment to 1989 Amendment.

"obligation . . . to pay money," non-judicial foreclosure is not covered under the FDCPA. Id. at 572 (quoting 15 U.S.C. § 1692a(5)). We have previously seemed to endorse such a view, see Burnett, 706 F.3d at 1239, and now endorse it fully. Entities engaged in non-judicial foreclosure actions in Colorado are not debt collectors under the FDCPA.[4]

Mr. Obduskey relies upon the Sixth Circuit's decision in Glazer v. Chase Home Fin. LLC, 704 F.3d 453 (6th Cir. 2013), in support of his contrary position. That court held that a non-judicial mortgage foreclosure was covered under the FDCPA because the "ultimate purpose of a foreclosure action is the payment of money," and "every mortgage foreclosure, judicial or otherwise, is undertaken for the very purpose of obtaining payment on the underlying debt, either by persuasion (i.e., forcing a settlement) or compulsion (i.e., obtaining a judgment of foreclosure, selling the home at auction, and applying the proceeds from the sale to pay down the outstanding debt)." 704 F.3d at 461, 463.

---

[4] A casual reading of the definition of debt collector may lead some to conclude that those who enforce security interests are only covered under § 1692(f) of the act and nowhere else. See 15 U.S.C. § 1692(a)(6) ("For the purpose of section 1692f(6) of this title, such term also includes any person who[se] . . . business the principal purpose of which is the enforcement of security interests."). Upon closer examination, however, § 1692f(6) prohibits "dispossession or disablement of property" when the security enforcer has no "present right to possession of the property," or when the enforcer has no "present intention to take possession of the property." A non-judicial foreclosure proceeding does not fit this bill — Wells Fargo has no present right to possession of the property nor could they take possession of the property. It is the public trustee who holds the deed of trust and sells the property. See Colo. Rev. Stat. §§ 38-38-101, -105. Therefore, because non-judicial foreclosure actions do not fall within this section, they also do not fall under this sub-definition in 1692a(6).

8

We disagree. There is an obvious and critical difference between judicial and non-judicial foreclosures — "[a] non-judicial foreclosure differs from a judicial foreclosure in that the sale does not preserve to the trustee the right to collect any deficiency in the loan amount personally against the mortgagor." Burnett, 706 F.3d at 1239 (emphasis added) (quoting Maynard, 401 F. App'x at 391–92). Colorado follows this general rule and allows a creditor to collect a deficiency only after the non-judicial foreclosure sale and through a separate action. See Colo. Rev. Stat. § 38-38-106(6) (2017); Bank of Am. v. Kosovich, 878 P.2d 65, 66 (Colo. App. 1994).

While judicial mortgage foreclosures may be covered under the FDCPA because of the underlying deficiency judgment, see Maynard, 401 F. App'x at 394, a non-judicial foreclosure proceeding is not covered because it only allows "the trustee to obtain proceeds from the sale of the foreclosed property, and no more." Burnett, 706 F.3d at 1239 (quoting Maynard, 401 F. App'x at 391–92). Had McCarthy attempted to induce Mr. Obduskey to pay money by threatening foreclosure, the FDCPA might apply. See Burnett, 706 F.3d at 1239 ("[T]he initiation of foreclosure proceedings may be intended to pressure the debtor to pay her debt."); Rousseau v. Bank of N.Y., 2009 WL 3162153, at *9 (D. Colo. Sept. 29, 2009); see also Ho, 858 F.3d at 573 ("If entities that enforce security interests engage in activities that constitute debt collection, they are debt collectors.").

Glazer and other courts have also relied on § 1692i — "Legal actions by debt collectors" — as evidence that Congress intended the FDCPA to apply to mortgage

9

foreclosures. See 704 F.3d at 462. Section 1692i is a venue provision. It requires "[a]ny debt collector who brings any legal action on a debt against any consumer . . . to enforce an interest in real property securing the consumer's obligation" to file in the judicial district where the property is located. 15 U.S.C. § 1692i(a)(1). The Glazer court noted that while this section

> does not speak in terms of debt collection, it applies only to "debt collectors" as defined in the first sentence of the definition, id. § 1692a(6), which does speak in terms of debt collection. This suggests that filing any type of mortgage foreclosure action, even one not seeking a money judgment on the unpaid debt, is debt collection under the Act.

704 F.3d at 462 (footnote omitted). We again disagree. Section 1692i by its very terms applies only to those who are originally debt collectors under § 1692a(6) — which McCarthy is not. It furthermore covers only "action[s] to enforce an interest in real property." 15 U.S.C. § 1692i(a)(1) (emphasis added). "Action" is generally understood to imply a "judicial proceeding," Action, Black's Law Dictionary (10th ed. 2014), and a non-judicial proceeding plainly does not fall under this definition.

    b. Policy Considerations

While we find that the plain language of the statute dictates our decision, policy considerations further support it. If the FDCPA applied to non-judicial foreclosure proceedings in Colorado, it would conflict with Colorado mortgage foreclosure law. McCarthy suggests two such conflicts:

> [1.] C.R.C.P. 120(a) requires foreclosing entities to provide notice of the foreclosure to any party that may have acquired an interest in the property, which is inconsistent with the FDCPA's prohibition on communicating with third parties about the debt. See 15 U.S.C. § 1692c(b).

10

[2.] [T]he FDCPA mandates that a debt collector must cease all direct communications with the borrower when the collector knows the borrower is represented by an attorney, see 15 U.S.C. § 1692c(a)(2), but C.R.C.P. 120(b) requires the foreclosing entity to post notice relating to the non-judicial foreclosure on the door of the subject property and mail it directly to the mortgagor regardless of representation.

Aplee. Supp. Reply Br. at 7–8. McCarthy sums it up as follows: "If the FDCPA applies to these communications, then a foreclosing entity could not initiate non-judicial foreclosure in Colorado without violating federal law." Id. at 8.

We start with the assumptions that (1) "[i]n areas of traditional state regulation . . . a federal statute has not supplanted state law unless Congress has made such an intention 'clear and manifest,'" Bates v. Dow Agrosciences LLC, 544 U.S. 431, 449 (2005) (quoting N.Y. State Conf. of Blue Cross & Blue Shield Plans v. Travelers Ins. Co., 514 U.S. 645, 655 (1995)), and (2) that mortgage foreclosure is "an essential state interest," BFP v. Resolution Tr. Corp., 511 U.S. 531, 544 (1994). Our reading of the plain language is bolstered by the fact that we find no "clear and manifest" intention on the part of Congress to supplant state non-judicial foreclosure law.[5] Indeed, many of the conflicts noted above are designed to protect the consumer, see Plymouth Capital Co. v. Dist. Court of Elbert County, 955 P.2d 1014, 1015 (Colo. 1998) ("Through creation of a public trustee's office, the General Assembly sought to ensure the protection of debtors while maintaining a speedy, efficient procedure for creditors."), and preempting them under the FDCPA would seem to both undermine their purpose as well as the purpose of the FDCPA. See 15 U.S.C. § 1692 (stating

_____

[5] For example, the word "foreclosure" is not mentioned once in either the statute or the legislative history.

11

the purpose of the FDCPA is "to promote consistent State action to protect consumers against debt collection abuses").

Some courts (reaching a contrary conclusion) have expressed concern that if the FDCPA does not apply to non-judicial foreclosure proceedings, it would immunize debt secured by real property where foreclosure was used to collect the debt. See Wilson, 443 F.3d at 376; Piper v. Portnoff Law Assocs., Ltd., 396 F.3d 227, 236 (3d Cir. 2005).

This proves too much. First, our holding is limited to non-judicial foreclosure proceedings and does not include judicial foreclosure actions. Second, our holding is also limited to the facts of the case. Whether or not more aggressive collection efforts leveraging the threat of foreclosure into the payment of money constitute "debt collection" is left for another day. See Maynard, 401 F. App'x at 395; Gburek v. Litton Loan Servicing LP, 614 F.3d 280, 385 (7th Cir. 2010) ("[T]he absence of a demand for payment is just one of several factors that come into play in the commonsense inquiry of whether a communication from a debt collector is made in connection with the collection of any debt."). In this case, however, the answer is clear — McCarthy did not demand payment nor use foreclosure as a threat to elicit payment. It sent only one letter notifying Mr. Obduskey that it was hired to commence foreclosure proceedings. Mr. Obduskey is, of course, free to contest this foreclosure in a Rule 120 proceeding, see C.R.C.P. 120(d); however, we hold that McCarthy's mere act of enforcing a security interest through a non-judicial foreclosure proceeding does not fall under the FDCPA.

12

II.    Remaining Claims

Mr. Obduskey's remaining claims warrant summary treatment. As noted by the district court, Mr. Obduskey failed to "allege any specific monetary loss" from the alleged defamatory statements. Obduskey, 2016 WL 4091174, at *5. As such, Mr. Obduskey's defamation claim must fail. See Lind v. O'Reilly, 636 P.2d 1319, 1320 (Colo. App. 1981). Concerning the extreme and outrageous conduct claim, Mr. Obduskey has not alleged any act on the part of Wells Fargo or McCarthy that is "so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency and to be regarded as atrocious and utterly intolerable in a civilized community." Hewitt v. Pitkin Cty. Bank & Tr. Co., 931 P.2d 456, 459 (Colo. App. 1995).

Mr. Obduskey's limitations claim is also without merit. He claims that the mortgage foreclosure proceeding took place seven years after the note was accelerated and is barred by a six-year limitations period. But the applicable limitations period for foreclosure proceedings in Colorado is 15 years. Colo. Rev. Stat. § 38-39-205. Finally, because Mr. Obduskey's claim that Colorado's Rule 120 hearing is unconstitutional (because it does not provide a full and fair hearing and has no right of appeal) was not adequately pled in his complaint, he cannot raise it here.

AFFIRMED.