**UNITED STATES COURT OF APPEALS**

**FOR THE TENTH CIRCUIT**
_____

**FILED**
**United States Court of Appeals**
**Tenth Circuit**

**February 9, 2023**

**Christopher M. Wolpert**
**Clerk of Court**

DENNIS OBDUSKEY,

    Plaintiff - Appellant,

v.

WELLS FARGO; WELLS FARGO
BANK; WELLS FARGO & CO.; WELLS
FARGO BANK, N.A.; WELLS FARGO
HOME MORTGAGE; MCCARTHY &
HOLTHUS, LLP,

    Defendants - Appellees.

No. 22-1156
(D.C. No. 1:15-CV-01734-JLK)
(D. Colo.)

_____

**ORDER AND JUDGMENT**[*]
_____

Before **MORITZ**, **BRISCOE**, and **CARSON**, Circuit Judges.
_____

Plaintiff Dennis Obduskey, proceeding pro se,[1] appeals the district court's

post-judgment order affirming the dismissal of his claims brought against the

_____

[*] After examining the briefs and appellate record, this panel has determined unanimously that oral argument would not materially assist in the determination of this appeal. *See* Fed. R. App. P. 34(a)(2); 10th Cir. R. 34.1(G). The case is therefore ordered submitted without oral argument. This order and judgment is not binding precedent, except under the doctrines of law of the case, res judicata, and collateral estoppel. It may be cited, however, for its persuasive value consistent with Fed. R. App. P. 32.1 and 10th Cir. R. 32.1.

[1] "Although we liberally construe *pro se* filings, we do not assume the role of advocate." *Yang v. Archuleta*, 525 F.3d 925, 927 n.1 (10th Cir. 2008) (internal quotation marks omitted).

defendants, Wells Fargo Bank, N.A ("Wells Fargo")[2] and McCarthy & Holthus LLP

("McCarthy").  After the district court entered judgment in the defendants' favor,

which both this court and the United States Supreme Court affirmed, the district court

judge disclosed a conflict of interest.  Thereafter, Obduskey challenged the outcome

of his case, and, upon independent review by another district court judge, the

judgment was affirmed.  Obduskey now appeals that post-judgment order.

Exercising jurisdiction under 28 U.S.C. § 1291, we AFFIRM the district

court's post-judgment order terminating this case.

**I**

A.    **Obduskey's Loan & Foreclosure Proceedings**

In 2007, Obduskey procured a $329,940 loan from Magnus Financial

Corporation to purchase a home in Bailey, Colorado.  ROA, Vol. I at 110, 115.  The

loan was secured by Obduskey's property and serviced by Wells Fargo.  *Id.*  In 2009,

Obduskey defaulted on the loan.  *Id.* at 25.  Over the next six years, Wells Fargo

initiated three nonjudicial foreclosure proceedings, none of which resulted in

foreclosure.[3]  *Id.* at 18.

---

[2] Wells Fargo Bank, N.A. asserts that Obduskey improperly named Wells Fargo, Wells Fargo Bank, Wells Fargo & Co., and Wells Fargo Home Mortgage as defendants in this case.  Aple. Br. at 2.  As did the district court, we will refer to these entities, collectively, as "Wells Fargo."  ROA, Vol. I at 823, 860.

[3] About half of the States provide for what is known as a nonjudicial foreclosure.  *Obduskey v. McCarthy & Holthus LLP*, 139 S. Ct. 1029, 1034 (2019).  Pursuant to a nonjudicial foreclosure, "notice to the parties and sale of the property occur outside court supervision."  *Id.*  Colorado's form of nonjudicial disclosure, however, "is something of a hybrid" because it requires some court involvement.  *Id.*

In 2014, Wells Fargo hired a new law firm, McCarthy, to initiate a fourth nonjudicial foreclosure on Obduskey's home. *Id.* at 128. In August 2014, McCarthy sent Obduskey undated letters advising him that the firm was serving as Wells Fargo's debt collector and that Wells Fargo intended to reinitiate foreclosure proceedings. *Id.* The notices also informed Obduskey that McCarthy would assume, for purposes of the Fair Debt Collection Practices Act (the "FDCPA"), that the debt was valid unless Obduskey responded within thirty days. *Id.* The FDCPA states,

> If the consumer notifies the debt collector in writing within [30 days] . . . , the debt collector shall cease collection of the debt, or any disputed portion thereof, until the debt collector obtains verification of the debt or a copy of a judgment, or the name and address of the original creditor, and a copy of such verification or judgment, or name and address of the original creditor, is mailed to the consumer by the debt collector.

---

Colorado's nonjudicial foreclosure process, at issue here, proceeds as follows:

> [A] creditor (or more likely its agent) must first mail the homeowner certain preliminary information, including the telephone number for the Colorado foreclosure hotline. Thirty days later, the creditor may file a "notice of election and demand" with a state official called a "public trustee." The public trustee records this notice and mails a copy, alongside other materials, to the homeowner. These materials give the homeowner information about the balance of the loan, the homeowner's right to cure the default, and the time and place of the foreclosure sale. Assuming the debtor does not cure the default or declare bankruptcy, the creditor may then seek an order from a state court authorizing the sale. . . . In court, the homeowner may contest the creditor's right to sell the property, and a hearing will be held to determine whether the sale should go forward.

*Id.* (citations omitted).

3

15 U.S.C. § 1692g(b).  Although Obduskey requested verification of the debt, he alleges that McCarthy did not provide the requested information before it initiated a foreclosure action in May 2015.  ROA, Vol. I at 16, 125–26, 129.

**B.     Obduskey's Claims Challenging Foreclosure Proceedings and Alleging FDCPA Violations**

In August 2015, Obduskey filed suit against Wells Fargo and McCarthy in the United States District Court for the District of Colorado.  *Id.* at 5.  In his complaint, Obduskey alleged (1) violations of the FDCPA; (2) unfair and deceptive trade practices in violation of the Colorado Consumer Protection Act; (3) defamation; (4) extreme and outrageous conduct; and (5) "commencement of an unlawful collections action."  *Id.* at 3; *see id.* at 21–27.  The case was assigned to Judge R. Brooke Jackson.  *Id.* at 5.

Wells Fargo and McCarthy filed motions to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6).  *Id.* at 141–55, 157–68.  On July 19, 2016, Judge Jackson granted the motions and dismissed each of Obduskey's claims with prejudice.  *Id.* at 822–38.

In his ruling, Judge Jackson concluded that neither Wells Fargo nor McCarthy qualified as a "debt collector" under the FDCPA and, therefore, the FDCPA's provisions did not apply to Obduskey's case.  *Id.* at 827–28.  Judge Jackson explained that the FDCPA's definition of "debt collector" excludes "any person collecting or attempting to collect any debt . . . which was not in default at the time it was obtained by such person."  15 U.S.C. § 1692a(6)(F); ROA, Vol. I at 826 ("Courts

4

have consistently held that a mortgage servicing company is not a debt collector within the meaning of the statute if the entity acquired the servicing rights before the loan was in default."). As to Wells Fargo, Judge Jackson reasoned that it was not a debt collector because it began servicing Obduskey's loan before he went into default; as to McCarthy, Judge Jackson reasoned that it was not a debt collector because "foreclosure proceedings are not a collection of a debt." ROA, Vol. I at 827–28. Judge Jackson noted, however, that "not all courts have agreed" on whether foreclosure proceedings are covered under the FDCPA. *Id.* at 828.

Judge Jackson also dismissed Obduskey's remaining four claims for failure to allege a necessary element or failure to plead a recognized cause of action. *Id.* at 829–37.

On August 17, 2016, Obduskey timely filed his notice of appeal. *Id.* at 7.

**C.    Appellate Review Before the United States Court of Appeals for the Tenth Circuit**

In January 2018, this court reviewed de novo Judge Jackson's judgment and unanimously affirmed the dismissal as to all claims. *See Obduskey v. Wells Fargo*, 879 F.3d 1216 (10th Cir. 2018), *aff'd sub nom. Obduskey v. McCarthy & Holthus LLP*, 139 S. Ct. 1029 (2019).

We first addressed Judge Jackson's dismissal of Obduskey's FDCPA claim against Wells Fargo and McCarthy. As an initial matter, we agreed with the district court that Wells Fargo was not a "debt collector" under the FDCPA because it began servicing Obduskey's loan before he went into default. *Obduskey*, 879 F.3d at 1219.

5

As Judge Jackson correctly noted, the FDCPA's definition of "debt collector" excludes "any person collecting or attempting to collect any debt . . . which was not in default at the time it was obtained by such person."  15 U.S.C. § 1692a(6)(F).

McCarthy, on the other hand, began its collection efforts *after* Obduskey's default.  The same reasoning that we applied to Wells Fargo, therefore, was not applicable to McCarthy.  Instead, we looked to the plain language of the FDCPA and policy considerations to determine whether McCarthy was a debt collector for purposes of the FDCPA.  *Obduskey*, 879 F.3d at 1220–23.  Although we acknowledged a split among our sister circuits, we ultimately held that "[e]ntities engaged in non-judicial foreclosure actions in Colorado are not debt collectors under the FDCPA."[4]  *Id.* at 1221.  Accordingly, we concluded that McCarthy was not a "debt collector" under the FDCPA on that basis.

---

[4] In our opinion, we explained the "critical difference between judicial and non-judicial foreclosures" that informed our holding:

> [A] *non-judicial* foreclosure differs from a judicial foreclosure in that the sale does not preserve to the trustee the right to collect any deficiency in the loan amount personally against the mortgagor. Colorado follows this general rule and allows a creditor to collect a deficiency only after the non-judicial foreclosure sale and through a separate action. . . . While *judicial* mortgage foreclosures may be covered under the FDCPA because of the underlying deficiency judgment, a non-judicial foreclosure proceeding is not covered because it only allows the trustee to obtain proceeds from the sale of the foreclosed property, and no more.  Had McCarthy attempted to induce . . . Obduskey to pay money by threatening foreclosure, the FDCPA might apply.

*Obduskey*, 879 F.3d at 1221–22 (internal quotation marks and citations omitted).

We also affirmed the dismissal of Obduskey's remaining claims, noting that they "warrant[ed] summary treatment." *Id.* at 1223.

**D.      Appellate Review Before the United States Supreme Court**

Obduskey subsequently petitioned the Supreme Court for certiorari as to his FDCPA claim against McCarthy.[5]  The Supreme Court granted Obduskey's petition "[i]n light of different views among the Circuits about application of the FDCPA to nonjudicial foreclosure proceedings." *Obduskey*, 139 S. Ct. at 1035.

On March 20, 2019, the Supreme Court unanimously affirmed this court's judgment.  In its opinion, the Supreme Court considered the extent to which the FDCPA applies to nonjudicial foreclosure proceedings by focusing on the FDCPA's "limited-purpose definition" of a "debt collector," as that term applies to McCarthy. *Id.* at 1036 ("For the purpose of section 1692f(6) [the] term [debt collector] also includes any person . . . in any business the principal purpose of which is the enforcement of security interests." (quoting 15 U.S.C. § 1692a(6))).

The parties did not dispute that McCarthy was subject to § 1692f(6)'s prohibitions, in light of its role enforcing security interests; however, the parties disagreed over whether McCarthy was subject to the main coverage of the FDCPA. *Id.*  The Supreme Court concluded that, except for the limited purpose of § 1692f(6), a business like McCarthy, which is engaged only in nonjudicial foreclosure proceedings, is not a "debt collector" under the FDCPA. *Id.* at 1038.  Accordingly,

---

[5] Obduskey did not include his FDCPA claim against Wells Fargo in his petition for certiorari.

the Supreme Court held that McCarthy was not subject to the FDCPA's main provisions. *Id.*

**E.      Judge Jackson's Disclosure of His Conflict of Interest**

On November 8, 2021, over two years after the Supreme Court issued its opinion in this case, the district court Clerk of the Court sent a letter to the parties (the "Clerk's Letter") advising them that Judge Jackson had learned that, while he was presiding over the case, he or his wife owned Wells Fargo stock. ROA, Vol. I at 841. The Clerk's Letter explained that Judge Jackson's "stock ownership would have required recusal under the Code of Conduct for United States Judges." *Id.* Additionally, the Clerk's Letter noted that the parties were "invited to respond to Judge Jackson's disclosure of a conflict in this case" by November 30, 2021. *Id.* The parties' responses would then be reviewed by another district court judge, without Judge Jackson's participation. *Id.*

On November 30, 2021, Obduskey timely responded to the Clerk's Letter. *Id.* at 843. In his response, Obduskey stated that he was not represented by counsel and that he had only received a copy of the Clerk's Letter a week earlier. *Id.* Obduskey requested at least three weeks to find new counsel and to "determine [his] ability to pursue the matter in the courts and potentially request a review." *Id.* However, Obduskey did not retain new counsel or file a motion to reopen the case. *See id.* at 8.

Wells Fargo also filed a request for an extension in line with any extension that the court might grant to Obduskey. *Id.* at 849. On December 15, 2021, Wells Fargo filed a response to the Clerk's Letter explaining why Judge Jackson's conflict

8

disclosure was not a basis to reopen the final judgment in this case. *Id.* at 848–59.

McCarthy did not file a response.

F.    **Independent Review of Judge Jackson's Judgment**

Judge Jackson recused from the case, and it was reassigned to Judge John L.

Kane. *Id.* at 8, 860. Over four months later, and Obduskey filing nothing in the

interim, on April 15, 2021, Judge Kane issued a Memorandum Opinion and Order

concluding that vacatur was unwarranted because Obduskey was not prejudiced by

Judge Jackson's failure to disclose his stock ownership and recuse from the case.[6] *Id.*

at 861, 866.

As an initial matter, Judge Kane concluded that Judge Jackson should have

recused himself from the case pursuant to 28 U.S.C. § 455. *Id.* at 865. Section 455

states that a judge must disqualify himself "in any proceeding in which his

impartiality might reasonably be questioned," including if the judge or his spouse

"has a financial interest . . . in a party to a proceeding." *Id.* at 864–65 (quoting

§ 455(a), (b)). In light of these provisions, Judge Kane concluded that an error

occurred "when Judge Jackson failed to disclose the stock ownership and recuse from

the case immediately upon its having been [assigned] to him by the Clerk's Office."

*Id.* at 866.

---

[6] After Obduskey submitted his response to the Clerk's Letter, stating his intent to retain new counsel, his prior counsel filed a motion to withdraw. ROA, Vol. I at 8, 865. Judge Kane granted this motion in his April 15, 2022, Order, in light of the fact that over four months had passed since Obduskey submitted his response to the Clerk's Letter and no new attorney entered an appearance. *Id.* at 865.

Although "[§] 455 does not, on its own, authorize the reopening of closed litigation," Judge Kane explained that Federal Rule of Civil Procedure 60(b) "'grants federal courts broad authority to relieve a party from a final judgment' by vacating the judgment." *Id.* at 866 (quoting *Liljeberg v. Health Services Acquisition Corp.*, 486 U.S. 847, 863 (1988)). Here, however, Obduskey had not filed a Rule 60(b) motion to vacate the judgment. But "[r]ather than encourage . . . Obduskey to pursue a fruitless [Rule 60(b)] motion," Judge Kane "preemptively" reviewed the case de novo to confirm whether Judge Jackson's failure to disqualify himself prejudiced Obduskey. *Id.* In doing so, Judge Kane used the factors set out by the Supreme Court in *Liljeberg*, 486 U.S. at 864, and concluded that "no prejudicial error would support vacatur here." ROA, Vol. I at 866; *see Liljeberg*, 486 U.S. at 864 (discussing the factors to be used by district courts when assessing whether a judgment should be vacated based on a judge's violation of § 455).

Although Judge Kane reasoned that Judge Jackson's failure to recuse warranted independent review of the case, he concluded that it did not warrant vacatur because the stock ownership "could not have had any influence on the outcome of this case." ROA, Vol. I at 869. Judge Kane explained that Judge Jackson dismissed the case based "*entirely* on issues of law" while "taking all of . . . Obduskey's allegations as true for purposes of the motions to dismiss." *Id.* at 867. Additionally, Judge Kane observed that Judge Jackson "made no discretionary rulings or subjective determinations that favored [Wells Fargo and McCarthy]." *Id.* (noting that Judge Jackson did not make any "findings of fact on contested matters of

10

evidence" or "any determinations of credibility that might have created a possibility of bias").

Additionally, Judge Kane noted that this court affirmed Judge Jackson's order granting the motions to dismiss after conducting a de novo review. *Id.* at 867–68. Judge Kane also observed that the Supreme Court largely agreed with this court's analysis on the FDCPA issue, identifying only a limited exception for entities such as McCarthy that is not relevant here. *Id.* at 868–69; *see Obduskey*, 139 S. Ct. at 1038 (holding that McCarthy is only a debt collector within the meaning of the FDCPA for the limited purpose of enforcing security interests under § 1692f(6) of the FDCPA). In sum, Judge Kane found it telling that "[t]welve other judges, three on the Court of Appeals and nine on the Supreme Court, gave this case a fresh look unhindered by an appearance of impropriety at all." ROA, Vol. I at 869.

In light of these factors, Judge Kane concluded that Judge Jackson's undisclosed stock interest "could not have had any influence or caused any prejudice to . . . Obduskey," and that "there [was] no useful purpose in reopening this case." *Id.* Judge Kane, therefore, terminated the matter. *Id.* On May 16, 2022, Obduskey filed a timely notice of appeal. *Id.* at 870.

## II

Federal Rule of Civil Procedure 60(b) "provides an 'exception to finality' that 'allows a party to seek relief from a final judgment, and request reopening of his case, under a limited set of circumstances.'" *United Student Aid Funds, Inc. v. Espinosa*, 559 U.S. 260, 269 (2010) (citation omitted) (quoting *Gonzalez v. Crosby*,

545 U.S. 524, 528–29 (2005)).  Although a district court has substantial discretion to grant Rule 60(b) relief as justice requires, "Rule 60(b) relief is extraordinary and may only be granted in exceptional circumstances."  *Lebahn v. Owens*, 813 F.3d 1300, 1306 (10th Cir. 2016) (internal quotation marks omitted).

The specific clause of Rule 60(b) at issue here, (b)(6), allows federal courts to relieve a party from a judgment for any reason—other than those in the five enumerated preceding categories—"that justifies relief."  Fed. R. Civ. P. 60(b)(6). "We have described Rule 60(b)(6) as a 'grand reservoir of equitable power to do justice in a particular case.'"  *Kile v. United States*, 915 F.3d 682, 687 (quoting *Cashner v. Freedom Stores, Inc.*, 98 F.3d 572, 579 (10th Cir. 1996)).  As relevant here, judicial bias can, depending on the specific circumstances, serve as a ground for relief under Rule 60(b)(6).  *See Liljeberg*, 486 U.S. at 863–64.

We review the denial of a post-judgment motion for abuse of discretion. *Jennings v. Rivers*, 394 F.3d 850, 854 (10th Cir. 2005).  We will reverse the district court's determination "only if we find a complete absence of a reasonable basis and are certain that the district court's decision is wrong."  *Utah ex rel. Div. of Forestry, Fire & State Lands v. United States*, 528 F.3d 712, 723 (10th Cir. 2008) (internal quotation marks omitted).  But a "district court would necessarily abuse its discretion if it based its ruling [under Rule 60(b)] on an erroneous view of the law or on a clearly erroneous assessment of the evidence."  *Zurich N. Am. v. Matrix Serv., Inc.*, 426 F.3d 1281, 1289 (10th Cir. 2005) (internal quotation marks omitted).  Moreover, "even in the context of the deferential abuse-of-discretion standard, we review

12

subsidiary legal questions de novo." *Johnson v. Spencer*, 950 F.3d 680, 701 (10th Cir. 2020).

## III

On appeal, Obduskey challenges Judge Kane's post-judgment order on Obduskey's response to the Clerk's Letter, which Judge Kane construed as a Rule 60(b) motion. Obduskey asks this court to vacate Judge Kane's order and remand the case to the district court "for new proceedings with hearings, discovery, and testimony." Reply Br. at 14.

Pursuant to § 455(a), "[a]ny justice, judge, or magistrate judge of the United States shall disqualify himself in any proceeding in which his impartiality might reasonably be questioned." 28 U.S.C. § 455(a). Additionally, § 455(b) specifically compels a judge to disqualify himself if either he or his spouse "has a financial interest in the subject matter in controversy or in a party to the proceeding." *Id.* § 455(b)(4). To be sure, Judge Kane correctly determined that Judge Jackson violated § 455 by failing to initially recuse from this case, in light of the fact that Judge Jackson or his wife owned Wells Fargo stock while he was presiding over the case.

"A conclusion that a statutory violation occurred does not, however, end our inquiry." *Liljeberg*, 486 U.S. at 862. "Although § 455 defines the circumstances that mandate disqualification of federal judges, it neither prescribes nor prohibits any particular remedy for a violation of that duty." *Id.* Rather, "Congress has wisely delegated to the judiciary the task of fashioning the remedies that will best serve the

purpose of the legislation." *Id.* The Supreme Court, therefore, has explained that "[t]here need not be a draconian remedy for every violation of § 455(a)," and it has held that a judge's violation of § 455(a) may constitute harmless error that does not warrant setting aside the judge's previous rulings. *Id.* This court has also extended the Supreme Court's harmless error analysis to violations of § 455(b). *Harris v. Champion*, 15 F.3d 1538, 1571 (10th Cir. 1994) (holding that a district court judge's violation of § 455(b) for failure to recuse was harmless error that did not warrant vacatur).

The Supreme Court has directed courts to consider the following factors when assessing whether a violation of § 455 is harmless error that does not warrant vacatur: "the risk of injustice to the parties in the particular case, the risk that the denial of relief will produce injustice in other cases, and the risk of undermining the public's confidence in the judicial process." *Liljeberg*, 486 U.S. at 864.

Here, Obduskey raises several arguments in support of vacatur. Specifically, Obduskey contends that Judge Kane erred in (1) finding that Judge Jackson lacked awareness of the conflict of interest when he presided over the case, and, therefore, this case should be remanded for a hearing on the issue of whether Judge Jackson should have recused himself from the original proceedings; (2) construing Obduskey's letter as a Rule 60(b) motion to vacate the judgment; and (3) concluding that vacatur is not warranted because upholding the judgment will not only result in injustice to Obduskey, but it will also undermine the public's confidence in the judicial system.

14

We conclude that Judge Kane did not err in any of these respects. Contrary to Obduskey's assertions, Judge Kane did not abuse his discretion in finding that Judge Jackson's financial conflict did not create the extraordinary or exceptional circumstances that warrant vacatur.

## A.    Obduskey's Request for a Hearing on the Recusal Issue

First, Obduskey argues that this case should be remanded to a new district court judge for a hearing solely on the issue of whether Judge Jackson should have recused himself from the original proceedings. Aplt. Br. at 12 (requesting "hearings related strictly to the recusal issue," rather than a "recitation of the reasons [why] all past rulings . . . made [Judge Jackson's] non-recusal appropriate"). Obduskey's request for a hearing on the recusal issue is unnecessary, however, as Judge Kane has already issued the ruling that Obduskey seeks. Specifically, Judge Kane concluded that "Judge Jackson should have recused from this case upon its assignment to him without taking any other action beforehand." ROA, Vol. I at 865.

Obduskey appears to be conflating two separate issues: (1) whether Judge Jackson's failure to recuse himself from the original proceedings constituted a violation of § 455; and (2) whether Judge Jackson's judgment should be vacated because of the § 455 violation. As to the first issue, Judge Kane agreed with Obduskey that Judge Jackson should have recused himself from this case upon its assignment to him, and that his failure to do so constituted an error under § 455. *Id.* at 866. "A conclusion that Judge [Jackson] should have recused himself does not, however, end our inquiry," as "a judge's violation of § 455[] may be harmless error

15

that does not warrant setting aside the judge's previous rulings." *Harris*, 15 F.3d at 1571. As to the second issue, Judge Kane ultimately concluded that, although Judge Jackson violated § 455, "no error affected . . . Obduskey's substantial rights," and vacatur, therefore, was unwarranted under the circumstances. ROA, Vol. I at 866.

Obduskey appears to seek a new hearing because he challenges Judge Kane's finding that Judge Jackson lacked awareness of the conflict of interest when he presided over the case. Aplt. Br. at 7; Reply Br. at 11–12. Specifically, Obduskey cites to a footnote in Judge Kane's opinion and order, in which Judge Kane noted that he was focusing his review on whether the belatedly disclosed stock ownership was prejudicial to Obduskey. Reply Br. at 11 (citing ROA, Vol. I at 866 n.5). In that footnote, Judge Kane explained that he was focusing on this issue considering "the circumstances here—in particular, Judge Jackson's lack of awareness of the grounds for disqualification during the time he presided over the case." ROA, Vol. I at 866 n.5.

Obduskey asserts that Judge Jackson's lack of knowledge of the grounds for disqualification was "never in evidence," Aplt. Br. at 7, and he speculates that Judge Kane learned about this information by "engag[ing] in ex-parte communications [with Judge Jackson]," Reply Br. at 11. "[S]imply speaking to each other in a federal court hallway," Obduskey contends, "is insufficient ground to conclude there was no bias, prejudice[,] or impropriety and does not resolve the question of Judge Jackson's knowledge." Aplt. Br. at 7. Contrary to Obduskey's assertions, however, Judge

16

Kane's finding that Judge Jackson lacked awareness of the conflict when he presided over the case is reasonably supported by the Clerk's Letter. As the Clerk's Letter explains, "Judge Jackson informed [the Clerk] that it ha[d] been brought to his attention that while he presided over the case[,] he or his spouse owned stock in Wells Fargo," and that "[t]he ownership of stock neither affected nor impacted his decisions in this case." ROA, Vol. I at 844.

As Judge Kane correctly explained, however, § 455 "can be violated without knowledge of a disqualifying circumstance." *Id.* at 864. Indeed, if a judge later becomes aware of a disqualifying circumstance, he or she has still violated § 455; at that point, the judge must then "take the steps necessary to maintain public confidence in the impartiality of the judiciary." *Liljeberg*, 486 U.S. at 861. Although a "judge's lack of knowledge of a disqualifying circumstance may bear on the question of remedy," this inquiry is separate from the question of whether the circumstances warrant recusal. *Id.* at 860.

Here, Judge Kane held that Judge Jackson violated § 455 *regardless* of whether he was aware of the stock ownership at the time of the case. *See id.* at 865–66 ("Judge Jackson should have recused from this case upon its assignment to him without taking any other action beforehand."). Therefore, Obduskey's request for "new proceedings with hearings, discovery, and testimony" as to the recusal issue is unnecessary.[7] Reply Br. at 14.

---

[7] Obduskey also asserts a due process theory in support of his argument that Judge Jackson should have recused himself from this case. Reply Br. at 7 ("The Due

**B.    Judge Kane's Construal of Obduskey's Response to the Clerk's Letter as a Rule 60(b) Motion**

Next, Obduskey challenges Judge Kane's "failure to even advise [Obduskey] of his intent to independently rule without communicat[ing]" this to Obduskey first. Reply Br. at 3.  According to Obduskey, Judge Kane "intentionally misread[]" Obduskey's response to the Clerk's Letter, and, by issuing his order with "a sense of urgency," Judge Kane deprived Obduskey of "opportunities to bring arguments" and "explore any grounds beyond what was already known."  Aplt. Br. at 11–12.[8]

Contrary to Obduskey's arguments, however, Judge Kane did not err in construing Obduskey's response to the Clerk's Letter as a Rule 60(b) motion.  In fact, Judge Kane's decision to construe Obduskey's response as a Rule 60(b) motion

---

Process clauses of the United States Constitution require judges to recuse themselves where the judge has a financial interest in the case's outcome."); *see, e.g.*, *Caperton v. A.T. Massey Coal Co.*, 556 U.S. 868, 876 (2009) (stating that due process requires that "a judge must recuse himself when he has 'a direct, personal, substantial, pecuniary interest' in a case" (quoting *Tumey v. Ohio*, 273 U.S. 510, 523 (1927))). As explained earlier, however, Judge Kane already concluded that Judge Jackson should have recused himself from this case upon its assignment to him.  ROA, Vol. I at 865.  Obduskey's argument, therefore, has no bearing on Judge Kane's subsequent inquiry regarding whether Judge Jackson's judgment should be vacated because of the § 455 violation.

[8] Obduskey also raises a host of grievances regarding the proceedings at both the district court and the Supreme Court level.  Specifically, Obduskey asserts that (1) the district court did not provide Obduskey with additional communication beyond the Clerk's Letter; (2) the district court initially denied Obduskey in forma pauperis status (although, upon reconsideration, the district court ultimately granted Obduskey's request); and (3) Justice Neil Gorsuch did not recuse himself from the case at the Supreme Court, despite previously recusing himself from this case when it was before this court.  Aplt. Br. at 8–10.  Each of these grievances, however, has no bearing on whether Judge Jackson's failure to recuse himself when the case was initially assigned to him amounted to prejudicial error.

18

benefitted Obduskey, who had failed to provide the court with any procedural basis for review of his claims. In his opinion, Judge Kane explained the legal framework for determining whether the judgment should be vacated because of a § 455 violation. ROA, Vol. I at 866. Although a § 455 violation does not, on its own, authorize vacatur, Rule 60(b)(6) vests courts with the discretion to vacate judgments in the interest of justice in extraordinary circumstances. *Liljeberg*, 486 U.S. at 863–64. Therefore, Judge Jackson's § 455 violation for the belated disclosure of stock ownership, on its own, would not allow the district court to grant Obduskey relief. Rather, the proper avenue for Obduskey to request relief would have been through a Rule 60(b)(6) motion.

Here, however, Obduskey did not file a Rule 60(b)(6) motion. Instead, he responded to the Clerk's Letter, and he asked the district court to consider it as his "initial response." ROA, Vol. I at 843. In his response, Obduskey explained that he had only recently learned about the Clerk's Letter from his former attorney's law firm, and that he would "need a minimum of at least three weeks to locate counsel and determine [his] ability to pursue the matter in the courts and potentially request a review." *Id.*

Judge Kane waited over four months to conduct his independent review, which far exceeded the minimum three-week timeframe that Obduskey had requested. During this time, the district court did not receive any further correspondence from Obduskey, and no new attorney entered an appearance on his behalf. *Id.* at 865. Under these circumstances, it was reasonable for Judge Kane to conclude that

19

Obduskey was proceeding pro se.[9] "A pro se litigant's pleadings are to be construed liberally," and such pleadings are "held to a less stringent standard than formal pleadings drafted by lawyers." *Hall v. Bellmon*, 935 F.2d 1106, 1110 (10th Cir. 1991). Accordingly, Judge Kane could reasonably construe Obduskey's response to the Clerk's Letter as a Rule 60(b)(6) motion, as such a motion was the proper vehicle for seeking the relief Obduskey requested.

Obduskey also asserts that Judge Kane "made a conscious decision to avoid any pretense of communication or fairness" when he issued his opinion and order terminating the case. Reply Br. at 2 (emphasis omitted). This argument is unavailing. The Clerk's Letter clearly advised the parties of Judge Jackson's conflict of interest and invited the parties to respond to this development in writing. ROA, Vol. I at 841. Moreover, the Clerk's Letter also provided the parties with guidance regarding the proper procedure for navigating Judge Jackson's disqualification

---

[9] Generally, there is no constitutional right to the appointment of counsel in civil cases. *Nelson v. Boeing Co.*, 446 F.3d 1118, 1120–22 (10th Cir. 2006). Although civil litigants "ha[ve] no Sixth Amendment right to counsel[,] . . . a court has discretion to request an attorney to represent a litigant who is proceeding in forma pauperis." *Johnson v. Johnson*, 466 F.3d 1213, 1217 (10th Cir. 2006) (per curiam). Here, however, Obduskey did not raise a request for counsel in his response to the Clerk's Letter. Rather, Obduskey requested at least three weeks to seek counsel and determine how he wished to proceed. Obduskey's response to the Clerk's Letter was therefore akin to a motion to extend, which Judge Kane effectively granted by waiting over four months to conduct his independent review. In light of district courts' wide discretion over how they manage their dockets and related deadlines, Judge Kane did not err in concluding that Obduskey was proceeding pro se and issuing his opinion and order. *See United States v. Schneider*, 594 F.3d 1219, 1226 (10th Cir. 2010) ("The power of district courts to manage their dockets is deeply ingrained in our jurisprudence.").

moving forward.  Specifically, the Clerk's Letter included an excerpt from Advisory Opinion 71 from the Judicial Conference Codes of Conduct Committee, which provides guidance for addressing a judge's disqualification that is not discovered until after the judge has already participated in a case.  *Id.*  Advisory Opinion 71 provides that, after a judge has disclosed the facts bearing on his disqualification, "[t]he parties may then determine what relief they may seek and a court (without the disqualified judge) will decide the legal consequence, if any, arising from the participation of the disqualified judge in the entered decision."  *Id.*  The Clerk's Letter, therefore, provided the parties with a procedure to request relief in light of Judge Jackson's disqualification, and this procedure complied with the guidance set out by Advisory Opinion 71.  In doing so, the Clerk's Letter promoted the very principles of communication, fairness, and transparency that Obduskey contends were lacking.[10]

---

[10] Obduskey appears to argue, for the first time in his reply brief, that he suffered a violation of his procedural due process rights when Judge Kane "fail[ed] to even advise [Obduskey] of his intent to independently rule without communicat[ing]" this to Obduskey first.  Reply Br. at 3 (asserting that "[w]hen an individual faces a deprivation of life, liberty, or property, procedural due process mandates that he or she is entitled to adequate notice, a hearing, and a neutral judge.").  "This court does not ordinarily review issues raised for the first time in a reply brief."  *Stump v. Gates*, 211 F.3d 527, 533 (10th Cir. 2000).  Although we have recognized an exception to this general rule when an issue initially raised in a reply brief relates to our subject matter jurisdiction, *Sadeghi v. INS*, 40 F.3d 1139, 1143 (10th Cir. 1994), Obduskey's arguments do not invoke such a concern.  Therefore, we need not consider this issue here.

Even if Obduskey had timely raised this argument, however, we would conclude that he did not suffer a violation of his procedural due process rights.  As we explained above, the Clerk's Letter provided Obduskey with (1) notice of Judge Jackson's conflict of interest; and (2) the opportunity to respond in writing and

Despite Obduskey's arguments to the contrary, he had over four months to find counsel, assess his ability to pursue the matter, and request relief from the district court. *Id.* at 843. However, Obduskey failed to do so; the only correspondence the district court had to rely upon was his initial response to the Clerk's Letter. Judge Kane, therefore, acted reasonably in construing Obduskey's response to the Clerk's Letter as a Rule 60(b)(6) motion, as such a motion was the proper vehicle for seeking the relief Obduskey requested.

## C.     Whether Vacatur Was Warranted Based on a Risk of Injustice and of Undermining the Public's Confidence in the Judicial Process

Lastly, Obduskey argues that vacatur was warranted because upholding the judgment will not only result in injustice to him, but it will also undermine the public's confidence in the judicial system. According to Obduskey, "[w]hen a jurist fails to follow the law, it puts the public trust of the institution at risk," Aplt. Br. at 2, and "[t]he judges who administer justice in our countr[y] must be seen as ethical and subject to meaningful correction when it is necessary," Reply Br. at 13.

Although Obduskey's sentiments may ring true, his concerns about undermining the public's trust in the judicial process have no application here. Judge Kane did not err in concluding that the circumstances of this case do not warrant

---

request any relief in light of Judge Jackson's disqualification, which would be considered by another judge without any conflicts of interest. Under these circumstances, where Obduskey had notice and the opportunity to be heard, he was not entitled to anything more. *See de la Llana-Castellon v. I.N.S.*, 16 F.3d 1093, 1096 (10th Cir. 1994) ("The fundamental requirement of due process is the opportunity to be heard at 'a meaningful time and in a meaningful manner.'" (quoting *Mathews v. Eldridge*, 424 U.S. 319, 333 (1976))).

vacatur.  After Judge Kane found that Judge Jackson violated § 455, he properly turned to the issue of whether the judgment should be vacated based on the *Liljeberg* factors.  In *Liljeberg*, the Supreme Court directed courts to consider the following factors when assessing whether a judgment should be vacated based on a violation of § 455: "the risk of injustice to the parties in the particular case, the risk that the denial of relief will produce injustice in other cases, and the risk of undermining the public's confidence in the judicial process."  486 U.S. at 864.

Here, each of the *Liljeberg* factors supports Judge Kane's decision to terminate the case.  As to the first factor, Judge Kane reasonably concluded that there was no risk of injustice to Obduskey because the stock ownership "could not have had any influence on the outcome of this case."  ROA, Vol. I at 869.  Judge Jackson dismissed the case based "*entirely* on issues of law" while "taking all of . . . Obduskey's allegations as true for purposes of the motions to dismiss."  *Id.* at 867.  Moreover, Judge Jackson did not make any contested factual findings or credibility determinations that could have favored Wells Fargo and McCarthy over Obduskey. *Id.*  Because this case was resolved solely on legal issues, relitigating the case only to reach the same result would result in an inefficient use of judicial resources and undermine the policy in favor of the finality of judgments.  *See Harris*, 15 F.3d at 1572 (noting that upholding the district court's judgments would not create an injustice to the losing party where "vacating the decisions and remanding for new proceedings . . . would be largely duplicative of those before us"); *Kotlicky v. U.S. Fid. & Guar. Co.*, 817 F.2d 6, 9 (2d Cir. 1987) ("In deciding a Rule 60(b) motion, a

23

court must balance the policy in favor of hearing a litigant's claims on the merits against the policy in favor of finality."). In these circumstances, Judge Kane reasonably concluded that upholding the judgment would not create an injustice to Obduskey.

Moreover, any risk of injustice to Obduskey is further minimized by the fact that a panel of this court—whose members had no conflicts of interest—affirmed Judge Jackson's order granting the motions to dismiss after conducting a de novo review of the legal issues. *See Obduskey*, 879 F.3d at 1219 ("We review the grant of a motion to dismiss de novo."). When we review de novo the district court's grant of a motion to dismiss, we "apply[] the same legal standard applicable in the district court." *Teigen v. Renfrow*, 511 F.3d 1072, 1078 (10th Cir. 2007). Our prior affirmance of Judge Jackson's decision, therefore, involved a fresh review of the record and relevant case law, without affording any deference to Judge Jackson's underlying decision. This review protects against any risk of injustice to Obduskey and assuages any doubts regarding any prejudice he may have suffered from the belatedly disclosed stock ownership.[11]

Similarly, the risk of injustice to Obduskey is also minimized by the Supreme Court's affirmance of our decision as to whether McCarthy was acting as a debt collector under the FDCPA. *Obduskey*, 139 S. Ct. at 1040. Although Obduskey's

---

[11] Because Judge Jackson did not disclose any conflict of interest involving McCarthy, Obduskey has not shown that he suffered any prejudice regarding the dismissal of McCarthy's claims. *See* ROA, Vol. I at 841.

24

claims against Wells Fargo were not on appeal to the Supreme Court, Judge Jackson's reasoning as to McCarthy involved the interpretation of the same statute that he used to determine whether Wells Fargo was a debt collector. *See* ROA, Vol. I at 827–28. The fact that the Supreme Court affirmed Judge Jackson's legal reasoning as to McCarthy, therefore, provides additional assurance that Judge Jackson reached his decision based on a correct understanding of the statute and that his decision was not tainted by the stock ownership.

As to the second *Liljeberg* factor, there is "little or no risk of injustice in other cases" because "the present denial rest[s] on the specific facts of this case." *Polaroid Corp. v. Eastman Kodak Co.*, 867 F.2d 1415, 1420 (Fed. Cir. 1989). Moreover, any risk of injustice in future cases is lessened by the fact that Judge Jackson's decision was affirmed by an unconflicted panel of this court.

Finally, as to the third *Liljeberg* factor, upholding Judge Jackson's judgment will not undermine public confidence in the judicial system. As an initial matter, the public's confidence in the judicial process is bolstered by the fact that Judge Jackson's decision has been affirmed by an unconflicted panel of this court, as well as by the Supreme Court's subsequent affirmance of our decision that McCarthy was not acting as a debt collector under the FDCPA. Additionally, after the conflict of interest was disclosed, Judge Kane's opinion concluding that Judge Jackson violated § 455 and affirming his recusal also promotes the public's confidence in the judicial

process.[12] *See Harris*, 15 F.3d at 1572 (noting that this court's "determination that a violation has occurred" and its order that the conflicted judge "should recuse himself from all further proceedings" involving the conflict "should instill confidence in the judiciary"). Moreover, at this late stage in the lifespan of the case, disturbing Judge Jackson's judgment entered over six years ago would likely *undermine*, rather than promote, the public's confidence in the judicial process. *See Polaroid Corp.*, 867 F.2d at 1420 ("[T]he public's confidence in the judicial process is less likely to be undermined when its result is adhered to in repose, and would be more likely to be undermined if the law were to countenance a sundering of the result six and one-half years later on grounds other than the merits.").

In sum, each of the *Liljeberg* factors supports Judge Kane's conclusion that vacatur was not warranted. The circumstances of this case do not present a risk of injustice to Obduskey or to litigants in other cases, nor do they risk undermining public confidence in the judicial system. Accordingly, Judge Kane did not err in finding that this case does not present the extraordinary or exceptional circumstances that warrant Rule 60(b)(6) relief.

---

[12] Although Obduskey alleges that Judge Kane is "a co-worker and close associate" of Judge Jackson, he points to no facts in the record that cause us to question Judge Kane's impartiality. Reply Br. at 1.

## IV

For the foregoing reasons, we AFFIRM Judge Kane's post-judgment order terminating this case.

Entered for the Court


Mary Beck Briscoe
Circuit Judge